IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Sergii Iakobets, | Case No. 4:25-cv-02308-PAB |
| Petitioner, | |
| -vs- | JUDGE PAMELA A. BARKER |
| Warden Voorhies, et al., | |
| Respondents. | MEMORANDUM OPINION & ORDER |

Currently pending before the Court is Petitioner Sergii Iakobets ("Iakobets") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition"). (Doc. No. 1.) On December 22, 2025, Respondents filed their Answer to the Petition. (Doc. No. 6.) On January 12, 2026, Iakobets filed his Traverse. (Doc. No. 7.) For the reasons stated herein, Iakobets' Petition is denied without prejudice. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

I.  **Factual Background**

On August 24, 2013, Iakobets was admitted to the United States on a K-1 fiancé nonimmigrant visa. (Doc. No. 6-1, ¶ 5.)[1] On February 27, 2014, Iakobets's status was adjusted to a conditional lawful permanent resident. (*Id.* at ¶ 6.) On August 21, 2015, Iakobets was indicted in Summit County Court of Common Pleas for one count of felonious assault under O.R.C. § 2903.11(A)(1), one count of endangering children under O.R.C. § 2919.22(B)(1), and two counts of endangering children under

---

[1] Respondents submitted the Declaration of Scott a Wichrowski with their Answer. (Doc. No. 6-1.) Iakobets does not dispute the averments in Mr. Wichrowski's Declaration.

O.R.C. § 2919.22(A).  (*Id.* at ¶ 7.)   On August 21, 2015, Iakobets was convicted on all counts in the indictment and was sentenced to a term of imprisonment of ten years.  (*Id.* at ¶ 8.)  Iakobets' conviction was affirmed on appeal on March 15, 2017.  *See State v. Iakobets*, No. 27974, 2017 Ohio App. LEXIS 891, at *10 (Ohio App. 9th Dist. Mar. 15, 2017).

On February 2, 2016, Iakobets filed a Form I-751 Petition to Remove Conditions on Residence with the United States Citizenship and Immigration Service.  (Doc. No. 6-1, ¶ 9.)  On November 8, 2017, the USCIS denied the petition and Iakobets's conditional lawful permanent resident status was terminated.  (*Id.* at ¶ 10.)  After completing his criminal sentence, Iakobets was taken into ICE custody on October 24, 2024.  (*Id.* at ¶ 11.)  On March 13, 2025, the Cleveland Immigration Court ordered Iakobets to be removed to Ukraine, and Iakobets waived his right to appeal the removal order.  (*Id.* at ¶¶ 12–14.)

On June 13, 2025, ICE completed a post order custody review, and issued Iakobets a decision to continue detention, indicating that Iakobets posed a danger to society and that there was a significant likelihood of removal in the reasonably foreseeable future.  (*Id.* at ¶ 15.)   On September 16, 2025, ICE transferred Iakobets's case to "ICE HQ Removal and International Operations" to facilitate Iakobets's removal.  (*Id.* at ¶ 16.)  On November 7, 2025, ICE received a travel document from Ukraine for Iakobets with an expiration date of December 4, 2025.  (*Id.* at ¶ 17.)  On November 17, 2025, Iakobets was scheduled to be removed from the United States via a "High-Risk Security Charter" but the jail facility missed his transfer, and Iakobets missed his flight.  (*Id.* at ¶ 18.)

ICE is currently working on facilitating Iakobets's removal on the next available High-Risk Security Charter.  (*Id.* at ¶ 20.)  ICE is unaware of any institutional barriers that would prevent it from removing Iakobets from the United States.  (*Id.*)

2

**II.     Procedural Background**

On October 15, 2025, Iakobets filed his Petition. (Doc. No. 1.) On December 8, 2025, the Court, having examined the Petition, could not "determine from its face that [Iakobets] is not entitled to relief." (Doc. No. 3, PageID #14.) On December 22, 2025, Respondents filed their Answer to the Petition. (Doc. No. 6.) On January 12, 2026, Iakobets filed his Traverse. (Doc. No. 7.) Accordingly, the Petition is ripe for the Court's review.

**III.    Standard of Review**

8 U.S.C. § 1231 governs the procedures for the detention and removal of aliens that are subject to an order of removal. The statute provides as follows:

> Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

8 U.S.C. § 1231(a)(1)(A). Certain aliens, who have "been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period . . . ." 8 U.S.C. § 1231(a)(6).

The Supreme Court has interpreted this statute to permit the government to detain an alien for periods of time longer than 90 days and has found that six-months is presumptively reasonable. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id.* "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* But "the *Zadvydas* due process analysis applies only if a danger of indefinite

3

detention exists." *Jiang Lu v. United States Dep't of Immigration and Customs Enforcement*, 22 F. Supp. 3d 839, 843 (N.D. Ohio 2014) (citing *Denmore v. Kim*, 538 U.S. 51, 531 (2003) (distinguishing *Zadvydas* because the petitioner had not demonstrated that there was a real danger of indefinite or permanent detention, and it was therefore premature to apply the due process analysis)).

IV.    **Analysis**

In his Petition, Iakobets asserts that the war in Ukraine is "getting worse day by day" and "for that reason, an (ICE) agent had informed [him] that it's unsafe for [him] to travel to Ukraine." (Doc. No. 1, PageID #8.) Iakobets further asserts that an ICE agent asked him "to select three countries of [his] choice" for alternative removal and those countries "all denied [him] entry" and that an ICE agent told him that ICE "decided to keep [him] in custody while they were working on other countries." (*Id.*) He finally asserts that "on the date of September 16, 2025" he reached the 180-day mark and he "feel[s] that [he is] being held hostage unlawfully detained (sic), which is against [his] constitutional and human rights." (*Id.*)

In their Answer, Respondents argue that "Iakobets does not meet his initial burden under *Zadvydas*." (Doc. No. 6, PageID #24.) Respondents argue that Iakobets failed "to submit any evidence showing an unwillingness by Ukraine to issue him travel documents or any barriers to his removal" and instead conveyed "his apparent frustration that he has been detained for more than six months rather than being 'released back to [his] family here in Ohio.'" (*Id.* at PageID #24–25.) Respondents also point out that "[v]arious courts around the country have recently found that removal of aliens to Ukraine is reasonably foreseeable despite the current war and conditions there." (*Id.* at PageID #25.)

In his Traverse, Iakobets argues that "in May of 2025 Respondent said to Petitioner that he

4

will be deported in the near future, and since then . . . Petitioner is still in custody." (Doc. No. 7, PageID #40.) He points out that, as of the date of his Traverse, it has been "nine month[s] and 23 days since the Immigration Judge g[a]ve the final order of removal." (*Id.* at PageID #40–41.) He asserts that Respondents are "blaming the Institutional Staff" for failing to transport him to his flight while "it is ICE responsibility to bring [him] to the Airoport (sic)." (*Id.* at PageID #41.) He also argues that Respondents "do not want to deport [him] on [a] commercial flight, just because they said that [he] is very dangerous" but that ICE "deport[s] people who killed, rape, etc. on [a] commercial flight." (*Id.*) He also argues that, on January 5, 2026, "Respondent's Officer" told him that there are no "charter flights" for January 2026, and that there might be one before April 2026. (*Id.* at PageID #42.) Iakobets also makes several arguments concerning the war in Ukraine, his criminal history, and his desire to see his family. (*Id.* at PageID #39–44.)

Upon review of the evidence in the record, the Court finds that Iakobets has not met his initial burden under *Zadvydas* to set forth good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. In a conclusory manner, Iakobets argues in the Petition that he "feel[s] that [he is] being held hostage unlawfully detained (sic), which is against [his] constitutional and human rights." (Doc. No. 1, PageID #8.) A petitioner, however, cannot meet his initial burden under *Zadvydas* through "speculation and conjecture." *Smith v. Simon*, No. 1:19 CV 41, 2019 U.S. Dist. LEXIS 148526, at *11 (N.D. Ohio July 17, 2019) (citing cases). Further, Iakobets's concerns regarding the war in Ukraine do not satisfy his burden. Respondents correctly point out that courts have found that removal to Ukraine is reasonably foreseeable notwithstanding the ongoing conflict. *Teryaeva-Reed v. LaRose*, No. 25-cv-2219, 2025 U.S. Dist. LEXIS 223765, at *5–6 (S.D. Cal. Nov. 13, 2025) (denying request for injunctive relief under *Zadvydas* when there was

5

evidence that "ICE now has a travel document [to Ukraine] and an intended removal date for [petitioner] later this month"); *Surovtsev v. Noem*, No. 1:25-CV-160-H, 2025 U.S. Dist. LEXIS, at *17 (N.D. Tex. Oct. 31 , 2025) ("The reapplication for documents, combined with the Ukrainian government's continued and expanding cooperation with the United States, generates a significant likelihood that ICE may have the ability to remove Surovtsev in the reasonably foreseeable future"); *Mankovskyi v. Baltazar*, No. 1:25-cv-02886-CNS, 2025 U.S. Dist. LEXIS 227120, at *7–8 (D. Colo. Oct. 27, 2025) ("Petitioner has not presented the Court with any argument that Respondents cannot practicably effectuate Petitioner's removal to Ukraine . . . .").

Moreover, Respondents have submitted unrebutted evidence that ICE received a travel document from Ukraine and that Iakobets would have been removed had he not missed his flight. (Doc. No. 6-1, ¶¶ 17–18.) And ICE is unaware of any institutional barriers that would prevent it from removing Iakobets from the United States. (*Id.* at ¶ 20.) Iakobets has not submitted any contrary evidence. *See Boachie-Danquah v. United States AG*, No. 1:17-cv-641, 2018 U.S. Dist. LEXIS 24197, at *7–8 (S.D. Ohio Jan. 14, 2018) ("In the absence of any evidence in the record to suggest that the Ghanaian Embassy will not issue the requested and expected travel document in the reasonably foreseeable future, the undersigned concludes that petitioner has failed to meet his initial burden of proof under *Zadvyda*s"). Indeed, his own assertions in his Traverse suggest that a new flight will be scheduled to remove him within the next few months. (Doc. No. 7, PageID #42.)

For all these reasons, the Court finds that Iakobets has not demonstrated good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. Based on the record, it appears that a new flight will be scheduled to depart, at the latest, in April 2026. If circumstances change, Iakobets may file a new §

6

2241 petition setting forth good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future. *See Estenor v. Holder*, No. 1:11-cv-743, 2011 U.S. Dist. LEXIS 133714, at *11 (W.D. Mich. Oct. 24, 2011) (denying petition without prejudice to future relief if circumstances change), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 132128 (W.D. Mich. Nov. 16, 2011).

V.     **Conclusion**

For the reasons set forth herein, Iakobets's Petition is denied without prejudice. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

Date: January 28, 2026

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE